**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ANGELA A. MURCHISON,            ) Case No. CV 15-5857-JPR
                               )
                Plaintiff,     )
                               )
        v.                     ) **MEMORANDUM DECISION AND ORDER**
                               ) **AFFIRMING COMMISSIONER**
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security,                      )
                               )
                Defendant.     )
_____)

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for supplemental security income benefits ("SSI").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c).  The matter is before the Court on the parties' Joint Stipulation, filed August 10, 2016, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is affirmed.

1

## II.   BACKGROUND

Plaintiff was born in 1955.  (Administrative Record ("AR") 49.)  She completed 12th grade and one year of college.  (Id.) She worked as an administrative assistant and loan processor. (AR 90.)

On February 10, 2012, Plaintiff applied for SSI, alleging that she had been unable to work since October 13, 1997 (AR 49, 154), because of a "[m]ajor depressive disorder" (AR 81).  After her application was denied, she requested a hearing before an Administrative Law Judge.  (AR 94, 99.)  A hearing was held on March 7, 2013, at which Plaintiff, who was not represented by counsel, requested an adjournment so that she could get a lawyer. (AR 73-80.)  A second hearing was held on July 19, 2013, at which Plaintiff, who was then represented by counsel, testified, as did a vocational expert.  (AR 44-72.)  In a written decision issued November 22, 2013, the ALJ found Plaintiff not disabled.  (AR 26-40.)  On January 15, 2014, Plaintiff sought Appeals Council review (AR 20-21), which was denied on June 10, 2015 (AR 1-3). This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  Richardson, 402 U.S. at

401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).
It is more than a scintilla but less than a preponderance.
Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.
Admin., 466 F.3d 880, 882 (9th Cir. 2006)).   To determine whether
substantial evidence supports a finding, the reviewing court
"must review the administrative record as a whole, weighing both
the evidence that supports and the evidence that detracts from
the Commissioner's conclusion."   Reddick v. Chater, 157 F.3d 715,
720 (9th Cir. 1996).   "If the evidence can reasonably support
either affirming or reversing," the reviewing court "may not
substitute its judgment" for the Commissioner's.   Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social
Security benefits if they are unable to engage in any substantial
gainful activity owing to a physical or mental impairment that is
expected to result in death or has lasted, or is expected to
last, for a continuous period of at least 12 months.   42 U.S.C.
§ 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.
1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step evaluation process to assess
whether a claimant is disabled.   20 C.F.R. § 416.920(a)(4);
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as
amended Apr. 9, 1996).   In the first step, the Commissioner must
determine whether the claimant is currently engaged in
substantial gainful activity; if so, the claimant is not disabled
and the claim must be denied.   § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful

3

activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, the claimant is not disabled and the claim must be denied.  § 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed.  § 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient RFC to perform her past work; if so, she is not disabled and the claim must be denied.  § 416.920(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy.  § 416.920(a)(4)(v); Drouin, 966 F.2d at 1257.  That determination comprises the fifth and final step in the sequential analysis.  § 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

1

B.   <u>The ALJ's Application of the Five-Step Process</u>

2     At step one, the ALJ found that Plaintiff had not engaged in

3 substantial gainful activity since February 10, 2012, the filing

4 date.[1]   (AR 31.)   At step two, he concluded that Plaintiff had

5 the severe impairment of bipolar disorder.   (<u>Id.</u>)   At step three,

6 he determined that her impairment did not meet or equal a

7 listing.   (AR 32.)

8     At step four, the ALJ found that Plaintiff had the RFC to

9 perform a full range of work at all exertional levels but with

10 nonexertional limitations.   (AR 34.)   Specifically, she could

11 perform "simple, repetitive, tasks" and "work occasionally with

12 coworkers and supervisors," but she was not able to work with the

13 public or perform "higher stress work such as work requiring

14 production quotas or assembly line work."   (<u>Id.</u>)

15     The ALJ found that Plaintiff had no past relevant work.   (AR

16 38.)   Finally, based on the VE's testimony, he concluded that

17 Plaintiff could perform jobs existing in significant numbers in

18 the national economy.   (AR 39.)   Accordingly, he found her not

19 disabled.   (<u>Id.</u>)

20 **V.   DISCUSSION**

21     Plaintiff alleges that the ALJ improperly rejected the

22 opinion evidence of treating doctor Cynthia Washington and

23 examining doctor Ernest Bagner.   (J. Stip. at 4-5.)

24 Specifically, Plaintiff alleges that the ALJ "failed to

25 articulate a legally sufficient rationale" for rejecting their

26 _____

27      [1] Because SSI payments may not be retroactively awarded,
Plaintiff's effective onset date is her filing date.   <u>See</u> SSR 83-
28 20, 1983 WL 31249, at *1 (1983).

opinions about her allegedly limited ability to "maintain attendance in the workplace." (Id. at 5, 9.)  For the reasons discussed below, remand is not warranted.

>A.    Applicable Law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither.  Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's.  Id.

This is so because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight.  § 416.927(c)(2). If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors.  § 416.927(c)(2)-(6).

When a treating physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81

F.3d at 830-31).   When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it.  <u>Id.</u> (citing <u>Lester</u>, 81 F.3d at 830-31).   Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>accord</u> <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004).

     B.   <u>Relevant Background</u>

       1.   *Early-2012 medical records*

On January 26, 2012, shortly before the February 10 onset date, Plaintiff visited an urgent-care center.  (AR 259.)  She tested positive for cocaine and was diagnosed with depression and cocaine abuse.  (AR 260-62.)  A mental-status exam found that she was depressed and had "poor" judgment but was otherwise normal.  (AR 259.)  She was "[u]sing cocaine."  (<u>Id.</u>)  During a visit to the West Central Family Mental Health center the same day, she "denied any current . . . substance abuse problems."  (AR 223.)  She returned to the urgent-care center on February 7, 2012, where she tested negative for cocaine and her depression and cocaine-abuse diagnoses were confirmed.  (AR 256.)  She tested positive for cocaine again in March 2012.  (AR 266.)

       2.   *Function reports*

In a function report dated April 12, 2012, Plaintiff noted that her daily routine involved watching television and playing with her dog.  (AR 176.)  She did not need to be reminded to take her medication.  (AR 178.)  She could iron, wash clothes and dishes, and clean the house.  (<u>Id.</u>)  She noted that she

1  experienced auditory and visual hallucinations and had problems

2  concentrating, handling stress, and getting along with others.

3  (AR 181-83.)  A third-party function report completed by her

4  daughter echoed much of Plaintiff's own report.  (See AR 168-75.)

5  Her daughter noted, however, that Plaintiff needed to be reminded

6  to take her medication.  (AR 170.)

7          3.  *Dr. Bagner*

8      On August 17, 2012, consulting psychiatrist Bagner completed

9  a psychiatric evaluation.  (AR 274-78.)  Dr. Bagner noted that

10  Plaintiff's chief complaints were "[m]ood swings, depression,

11  restlessness, [and] low motivation."  (AR 274.)  She reported

12  "auditory hallucinations and paranoia at times," was seeing a

13  psychiatrist, and was prescribed Cymbalta and Abilify.[2]  (AR

14  275.)  She had a history of cocaine dependence but had "been

15  clean since March of 2012."  (Id.)  Dr. Bagner did not review

16  Plaintiff's medical records because "no medical records [were]

17  available for review."[3]  (Id.)

18

---

19     [2] Cymbalta is the brand name of a selective serotonin and
   norepinephrine reuptake inhibitor used to treat depression and
20  generalized anxiety disorder.  See Duloxetine, MedlinePlus,
   https://medlineplus.gov/druginfo/meds/a604030.html (last updated
21  May 15, 2016).  Abilify is the brand name of an "atypical
   antipsychotic" drug used to treat episodes of mania or mixed
22  episodes (symptoms of mania and depression that happen together).
   See Aripiprazole, MedlinePlus, https://medlineplus.gov/druginfo/
23  meds/a603012.html (last updated June 15, 2016).  It is also used
   with an antidepressant to treat depression when symptoms cannot
24  be controlled by the antidepressant alone.  Id.
25

26     [3] Indeed, although the ALJ held the record open for 30 days
   after the hearing (AR 71), Plaintiff submitted no additional
27  treatment records (compare AR "Court Transcript Index," with AR
   41-43 ("List of Exhibits" from ALJ decision)), only a medical
28  (continued...)

1      In the mental-status examination, Dr. Bagner noted that

2  Plaintiff was cooperative and had good eye contact. (AR 276.)

3  Her tone and volume of speech were "soft" and her rate of speech

4  was "slow," but she was "clear and coherent." (Id.) She was

5  "depressed" and her affect was "blunted." (Id.) Dr. Bagner

6  noted that Plaintiff "did not exhibit looseness of association,

7  thought disorganization, flight of ideas, thought blocking,

8  tangentiality or circumstantiality." (Id.) She admitted to

9  auditory and visual hallucinations. (Id.) She was alert and

10  oriented to time, place, person, and purpose. (Id.) Dr. Bagner

11  tested Plaintiff's memory and noted that she was "able to recall

12  3 out of 3 objects immediately and 1 out of 3 objects in 5

13  minutes[,] . . . what she ate for breakfast . . . [and] her date

14  of birth." (AR 277.) She was "able to perform Serial 3's,"

15  spell "music" forward and backward, answer basic "fund of

16  information" questions, and interpret the meaning of a proverb.

17  (Id.) Dr. Bagner diagnosed Plaintiff with "Bipolar disorder, Not

18  Otherwise Specified" and "Cocaine Dependence, early remission."

19  (Id.) She was not limited in her "ability to follow simple oral

20  and written instructions" but was "mildly limited" in her ability

21  to follow detailed instruction; interact with the public,

22  coworkers, and supervisors; and comply with job rules, such as

23  safety and attendance. (AR 277-78.) She was "moderately

24  limited" in her ability to "respond to change in a routine work

25  setting," "respond to work pressure in a usual working setting,"

26

27

28  [3] (...continued)
  questionnaire (see AR 43, 290).

1    and partake in her daily activities.  (AR 278.)  Her prognosis

2    was "fair with continued treatment."  (Id.)

3           4.   *Dr. Brooks*

4           On September 18, 2012, Dr. R.E. Brooks,[4] a state-agency

5    medical consultant, reviewed Plaintiff's medical records and

6    completed a case analysis.  (AR 81-92.)  Dr. Brooks also assessed

7    Plaintiff's mental RFC.  (AR 88-90.)  Dr. Brooks noted that

8    Plaintiff reported that she was able to watch TV, play with her

9    dog, cook, iron, mop, sweep, do dishes, shop, use public

10   transportation, go out alone, and talk on the phone.  (AR 85.)

11   She found it "hard to understand and comprehend conversation,"

12   did not like "being around people," and had poor concentration.

13   (Id.)  Dr. Brooks summarized the function reports from Plaintiff

14   and her daughter (see AR 168-83) and reviewed Plaintiff's medical

15   records (see AR 85 (reviewing records from "Exodus Recovery" (see

16   AR 253-72), "CO/M/LA W Central Mental," including "06/06/12

17   Initial Assessment" (see AR 214-23, 228-52), and Dr. Bagner's

18   report (see AR 274-78))).  She had "moderate" restrictions in her

19   activities of daily living and "moderate" difficulty in

20   maintaining concentration, persistence, or pace.  (AR 86.)  She

21   had "mild" difficulties in maintaining social functioning.  (Id.)

22   Dr. Brooks found Plaintiff "partially credible," noting that she

23   "show[ed] good eye contact" and had "soft and slow rate [of]

24   speech" but was "clear and coherent."  (AR 87.)  She had "no

25

26   ─────────────────

27        [4] Dr. Brooks has a specialty code of "37" (AR 93),
     indicating "[p]sychiatry," see Program Operations Manual System
     (POMS) DI 24501.004, U.S. Soc. Sec. Admin. (May 5, 2015),
28   http://policy.ssa.gov/poms.nsf/lnx/0424501004.

10

looseness of associations," and her memory was "intact."  (<u>Id.</u>)

In the mental RFC assessment, Dr. Brooks opined that Plaintiff could "understand and remember simple instructions and work procedures but ha[d] some limitation in the ability to understand/remember detailed instructions."  (AR 88.)  She was "moderately limited" in her ability to understand, remember, and carry out detailed instructions.  (<u>Id.</u>)  She had no other significant limitations in the areas of "understanding and memory" or "sustained concentration and persistence."  (<u>Id.</u>)  Plaintiff was "[n]ot significantly limited" in her ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" or "complete a normal workday and workweek without interruptions from psychologically based symptoms."  (AR 88-89.)  She was "able to maintain sufficient attention and concentration to consistently perform simple tasks and maintain a regular schedule."  (AR 89.)  Dr. Brooks also found that Plaintiff had "no limitations" in the area of social interaction, was "mildly limited" in her ability to comply with job rules "such as safety and attendance," and was "moderately limited" in her ability to respond to changes and work pressure in a normal work setting. (AR 89-90.)

5.   *Dr. Washington*

Plaintiff started seeing Dr. Washington, her treating psychiatrist, on February 5, 2013 at the West Central Family

11

Mental Health center.[5]  (AR 291-95.)  Dr. Washington met with Plaintiff every two or three months for approximately "20-30 minutes" at a time.  (Id.)  In a May 23, 2013 progress report, Dr. Washington noted that Plaintiff's symptoms had "waxed and waned over the past year" and that in her immediately prior appointment, on May 7, she "presented with complaints [of] auditory hallucinations, visual hallucinations, paranoia, depressed mood, anger/irritability, racing thoughts, worry, variable sleep, [and] fatigue." (AR 289.)  Plaintiff's medications were "changed" to Cymbalta and Seroquel.[6]  (Id.)  Dr. Washington recommended that Plaintiff continue with her treatment "to stabilize [her] condition," noting that her "residual functional limitations" were "[s]evere."  (Id.)  Dr. Washington found that Plaintiff had "[i]mpaired social and occupational functioning due to mood swings, perceptual disturbances[,] and impaired concentration."  (Id.)  None of Dr. Washington's notes indicate an awareness of Plaintiff's substance-abuse history.

On July 16, 2013, Dr. Washington completed an RFC questionnaire.  (AR 291-95.)  She noted that her last appointment with Plaintiff had been on July 9.  (AR 291.)  Dr. Washington was

---

[5] The ALJ mistakenly stated that Plaintiff began seeing Dr. Washington in June 2012.  (AR 37.)  According to Dr. Washington, that was when Plaintiff first became a patient at the clinic, but with someone other than Dr. Washington.  (See AR 291.)  That too, was incorrect, however, as Plaintiff had apparently been a patient at the clinic off and on since 2007.  (See AR 193; see, e.g., AR 223, 237-52.)

[6] Seroquel is the brand name of a drug used to treat depression in patients with bipolar disorder.  See Quetiapine, MedlinePlus, https://medlineplus.gov/druginfo/meds/a698019.html (last updated Apr. 15, 2014).

asked to rate Plaintiff's "mental abilities to function
independently, appropriately, effectively, and on a sustained,
consistent, useful and routine basis, without direct supervision
or undue interruptions or distractions — 8 hours per day, 5 days
per week — in a regular, competitive work setting for more than
six consecutive months." (AR 292.) She indicated that in the
areas of remembering locations and "work-like" procedures;
understanding, remembering, and carrying out "very short and
simple" instructions; making simple work-related decisions;
maintaining socially appropriate behavior and adhering to basic
standards of neatness and cleanliness; traveling in unfamiliar
places or using public transportation; and setting realistic
goals or making plans independently of others, Plaintiff's mental
abilities would preclude her performance for five percent of the
workday. (AR 292-93.) Plaintiff's performance would be
precluded for 10 percent of the workday in the areas of
performing activities within a schedule, maintaining regular
attendance, and being punctual; working in coordination with or
in proximity to others without being distracted by them; and
getting along with coworkers or peers without distracting them or
exhibiting behavioral extremes. (Id.) Her performance would be
precluded for 15 percent or more of the workday in the areas of
understanding, remembering, and carrying out detailed
instructions; maintaining attention and concentration for
extended periods of time; completing a normal workday and
workweek without interruptions from psychologically based
symptoms; and performing at a consistent pace without an
unreasonable amount of rest. (Id.) Her performance would be

precluded between zero and five percent of the workday in
sustaining an ordinary routine without special supervision (AR
292), between five and 10 percent in interacting appropriately
with the general public and responding appropriately to changes
in the work setting (AR 293), and between 10 and 15 percent in
accepting instructions and responding appropriately to criticism
from supervisors (id.).  Dr. Washington also noted that Plaintiff
suffered from "memory lapses."  (Id.)  To the question,

> Based upon all of [Plaintiff's] physical and mental
> limitations taken in combination, what percent of [an] 8-
> hour work day, 5 days a week, in a competitive work
> environment would [Plaintiff] be precluded from
> performing a job, or "off task", that is, either unable
> to perform work and/or away from [Plaintiff's] work
> environment due to those limitations?

Dr. Washington checked, "[m]ore than 30 [percent]."  (AR 294.)
She opined that Plaintiff's conditions would cause her to miss an
average of four days of work a month and be unable to complete an
eight-hour workday for another four days a month.  (Id.)  Dr.
Washington opined that "within a reasonable degree of medical
certainty," Plaintiff would be "unable to obtain and retain work
in a competitive work setting - 8 hours a day, 5 days a week -
for a continuous period of at least six months."  (Id.)

### 6.  *Plaintiff's testimony*

At the July 19, 2013 hearing, Plaintiff testified that she
could not "concentrate very long" because she heard voices, saw
faces, and suffered from short-term memory loss.  (AR 51.)  She
"sometimes" had difficulty remembering to take her medication and

14

"kind of like [took] it sporadically" (AR 52; see also AR 62),
but she noted that the medications she took in the morning helped
with her mood (AR 65-66).  She confirmed that she was "severely
addicted to cocaine" until 2012.  (AR 58.)  When asked by the
ALJ, "Did you stop taking your medications for mental health
treatment?," Plaintiff responded, "Yes, I did."  (Id.)  She
stopped taking her medication "for about six months one time,"
but she could not remember the exact dates.  (AR 58-59.)  Since
March 2012 she had not consumed any alcohol or drugs other than
her medication.  (AR 67.)

C.   Analysis

The ALJ found that Plaintiff was able to perform "a full
range of work at all exertional levels" but was limited to
"simple, repetitive, tasks," should avoid working with the public
and performing "higher stress work such as work requiring
production quotas or assembly line work," and could "work
occasionally with coworkers and supervisors."  (AR 34.)  The ALJ
considered Plaintiff's statements and the third-party function
report provided by her daughter (AR 35-36) and concluded that
they were not fully credible (AR 36).[7]  He summarized the medical
opinions of examining doctor Bagner and treating doctor
Washington.  (AR 36-38.)  He accorded "reasonable weight" to the
opinions of Drs. Bagner and Brooks and "little weight" to the
opinion of Dr. Washington.  (AR 38.)

As an initial matter, Plaintiff's assertion that the ALJ

---

[7] Plaintiff has not challenged the ALJ's assessment of her
credibility or rejection of the third-party report.

15

ignored the "uncontroverted" (J. Stip. at 10) opinions of Drs. Washington, Bagner, and Brooks about Plaintiff's "attendance problem" (id. at 9) and that those opinions were consistent with each other on that point (see, e.g., id. at 10) is incorrect. Dr. Washington's opinion about Plaintiff's workplace attendance — that she would be "off task" more than 30 percent of the workday, absent four days a month, and unable to complete an eight-hour workday four days a month (AR 294) — was not "uncontroverted." Dr. Brooks opined that Plaintiff was "[n]ot significantly limited" in her ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" or "complete a normal workday and workweek without interruptions from psychologically based symptoms." (AR 88–89.) She was "able to maintain sufficient attention and concentration to consistently perform simple tasks and maintain a regular schedule." (AR 89.) Dr. Brooks noted a mild limitation in Plaintiff's ability to comply with job rules "such as safety and attendance." (Id.) Similarly, Dr. Bagner noted that Plaintiff was "mildly limited" in her ability to comply with job rules, such as safety and "attendance," and was "moderately limited" in her ability to "respond to changes in a routine work setting" and "respond to work pressure in a usual working setting." (AR 278.)

Thus, neither Dr. Bagner nor Dr. Brooks opined that Plaintiff would have the serious problems with attendance that were identified by Dr. Washington. The ALJ did not ignore the medical opinions about Plaintiff's workplace attendance. Rather, he rejected Dr. Washington's more restrictive finding and, as explained below, provided specific, legitimate reasons for doing

so.[8]  Because Dr. Washington's opinion was contradicted by the
opinions of Drs. Bagner and Brooks, the ALJ had to give only
specific and legitimate reasons for rejecting it.  See Carmickle,
533 F.3d at 1164.  The ALJ did so.

First, the ALJ gave "little weight" to Dr. Washington's
opinion in part because of her failure to mention Plaintiff's
problems with cocaine abuse, taking medication as prescribed, and
complying with treatment despite evidence in the record showing
that those problems were both relatively recent and pervasive.
(AR 38.)  Indeed, Dr. Washington does not mention Plaintiff's
history of cocaine abuse in either her May 23, 2013 progress note
or her July 16 RFC questionnaire.  (See AR 289, 291-95.)  When
Plaintiff returned to West Central Family Mental Health clinic —
where Dr. Washington worked — in January 2012, she apparently
falsely stated that she had no substance-abuse problems.  (AR
223.)  But Plaintiff's last admitted cocaine use was in March

---

[8] Plaintiff argues for the first time in her reply that the
ALJ failed to incorporate her moderate limitations in
"concentration, persistence, or pace" into the RFC.  (See J.
Stip. at 22-25.)  Because this issue was raised for the first
time in the reply, the argument is waived.  See Polion v. Colvin,
No. SACV 12-0743-DTB, 2013 WL 3527125, at *2 n.4, *7 n.7 (C.D.
Cal. July 10, 2013) (citing Eberle v. City of Anaheim, 901 F.2d
814, 818 (9th Cir. 1990)); see also Thacker v. Comm'r of Soc.
Sec., No. 1:11-cv-00613-LJO-BAM, 2012 WL 1978701, at *11-12 (E.D.
Cal. June 1, 2012) (applying general rule — that issues raised
for first time in reply brief are waived — in Social Security
context).  Accordingly, the Court does not consider it.  It does
appear, however, that the ALJ reasonably translated the mild
deficiencies assessed by examining doctor Bagner and the moderate
deficiencies assessed by reviewing doctor Brooks into Plaintiff's
RFC by limiting her to simple, repetitive tasks and low-stress
work.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th
Cir. 2008).

2012.  (See AR 266, 291.)  The ALJ noted that Plaintiff was not
"honest in her history" when it came to her drug use.  (AR 38.)
Indeed, Plaintiff made inconsistent statements about her cocaine
use (see, e.g., AR 223 (Jan. 26, 2012: denying any substance
abuse), 259 (same day: noted as "[u]sing cocaine")).  Nothing in
the record indicates that Dr. Washington had any awareness of
Plaintiff's substance-abuse history.

As to taking her prescribed medicines, in April 2012
Plaintiff claimed that she did not need reminders to take her
medication, but her daughter said that she did.  (AR 170, 178.)
In June 2012 Plaintiff reported having been off her medication
since that February and expressed the desire to start again.  (AR
230).  At the July 19, 2013 hearing, she testified that she had
difficulty remembering to take her medication.  (AR 52, 62.)  The
ALJ noted that Plaintiff "made significant improvement with
increased functioning after she stopped taking cocaine and after
she started taking psychotropic medication."  (See, e.g., AR 63-
66 (Plaintiff testifying that medications helped alleviate her
symptoms), 219 (June 2012 assessment noting that Cymbalta "was
effective"), 240 (Nov. 2010 medication report noting "good
response to meds"), 256 (Feb. 2012 urgent-care-center discharge
summary noting "importance of sobriety coupled with medication
compliance" and "[r]ecovery [p]rognosis" of "[g]ood"), 259 (Jan.
2012 recovery-center progress report noting "good effect" of
medication, and Plaintiff reporting that she was "really positive
on it"), 278 (Dr. Bagner's Aug. 2012 opinion that Plaintiff's
"prognosis is fair with continued treatment").)  The ALJ was not
persuaded that Plaintiff's "drug abuse [was] not a material

18

factor in this case."  (AR 38.)

Dr. Washington's apparent ignorance of Plaintiff's medical issues was relevant to the ALJ's assessment of the weight to give her opinion.  See § 416.927(c)(2)(ii) ("[n]ature and extent of the treatment relationship" and "the more knowledge a treating source has about your impairment(s)" are relevant factors in assessing treating-source opinion); Edlund v. Massanari, 253 F.3d 1152, 1157 & n.6 (9th Cir. 2001) (as amended) (same); see also § 416.927(c)(6) (extent to which doctor is familiar with record is relevant factor in deciding weight to give opinion).  Because he found Plaintiff to be "not entirely credible" (AR 36) and "not honest in [the] history" she provided to her treating doctors about her cocaine and medication use (AR 38) — findings Plaintiff has not challenged — the ALJ properly gave little weight to Dr. Washington's opinions.  See James v. Astrue, No. C08-653 CRD, 2009 WL 112952, at *3-4 (W.D. Wash. Jan. 13, 2009) (holding that ALJ did not err in rejecting treating doctor's opinion because Plaintiff had not been "truthful" with her doctor about "her activities or abilities").

Second, the ALJ noted that Dr. Washington's opinion that Plaintiff had a "diminished ability to function" was not corroborated by a "longitudinal treatment record" and was contradicted by Dr. Bagner's mental-status examination.  (AR 38.) Indeed, the other medical-opinion testimony in the record contradicted Dr. Washington's assessment of Plaintiff's attendance limitations.  Dr. Brooks opined that Plaintiff had only mild limitations in attendance (AR 89) and Dr. Bagner noted mild to moderate limitations in that area (AR 278).  Dr. Bagner

19

performed a complete psychiatric evaluation of Plaintiff, finding
that she had only mild or moderate functional limitations.  (AR
277-78.)  He opined that her prognosis was "fair with continued
treatment."  (AR 278.)  Because Dr. Bagner personally observed
and examined Plaintiff and his findings were consistent with the
objective evidence, his opinion constitutes substantial evidence
supporting the ALJ's decision.  See Tonapetyan, 242 F.3d at 1149
(finding that examining physician's "opinion alone constitutes
substantial evidence, because it rests on his own independent
examination of [plaintiff]"); Andrews v. Shalala, 53 F.3d 1035,
1041 (9th Cir. 1995) (opinion of nontreating source based on
independent clinical findings may itself be substantial
evidence).  This is particularly true given Dr. Washington's
apparently limited relationship with Plaintiff.  See Lester, 81
F.3d at 830-31.

Dr. Brooks's opinion also constitutes substantial evidence
because he relied on Dr. Bagner's objective medical findings.
(AR 85, 87-88 (listing Dr. Bagner's report under "findings of
fact" and giving it "[g]reat weight" for being "consistent with
other medical findings")); see Tonapetyan, 242 F.3d at 1149
(nonexamining physician's opinion constituted substantial
evidence because it rested on examining physician's objective
findings); Thomas, 278 F.3d at 957 ("The opinions of non-treating
or non-examining physicians may also serve as substantial
evidence when the opinions are consistent with independent
clinical findings or other evidence in the record.").  Thus, the
ALJ permissibly discounted Dr. Washington's opinion because it
was inconsistent with the record evidence.  See Batson, 359 F.3d

at 1195 (ALJ may discredit treating physicians' opinions that are "unsupported by the record as a whole").

Further, Dr. Washington's opinion was not supported by her own treatment notes.  At the hearing, the ALJ asked if there were any treatment records after June 6, 2012, and Plaintiff's attorney noted that he had requested the records and was rerequesting them.  (AR 50.)  The ALJ held the record open for 30 days after the hearing to allow Plaintiff to submit those treatment notes (AR 71), but she did not do so.  They were also not submitted to the Appeals Council.  (See AR 5 (citing AR 199).)  The only treatment note in the record from Dr. Washington is the May 23, 2013 progress report (AR 289), and the only medical opinion from Dr. Washington is the July 16 RFC check-box questionnaire (AR 291-95).  The RFC form provides no analysis or support for the check-box findings.  (See generally id.)  The ALJ properly relied on the apparent lack of treatment history and examination findings to discount Dr. Washington's opinion.  See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (ALJ may permissibly reject check-off reports that do not contain explanation of basis for conclusions); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected when treatment notes "provide[d] no basis for the functional restrictions he opined should be imposed on [plaintiff]"); Batson, 359 F.3d at 1195 ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings[.]").

Because the ALJ provided specific and legitimate reasons for

giving Dr. Washington's opinion limited weight, remand is not warranted.

**VI.   CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[9] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice.

DATED: November 10, 2016          _____
                                          JEAN ROSENBLUTH
                                          U.S. Magistrate Judge

---

[9] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."